**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMERICAN TELECOM CORPORATION,** Plaintiff, | ) | |
| v. | ) | No. 03-1627 C<br>Judge Emily C. Hewitt |
| **UNITED STATES,** Defendant. | ) | |

**AMERICAN TELECOM CORPORATION'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

COMES NOW, Plaintiff, American Telecom Corporation, by and through undersigned counsel, and respectfully submits its opposition to Defendant's Motion for Partial Dismissal. Defendant contends that a prior appeal of a wrongful termination filed and dismissed without prejudice by Plaintiff at the Interior Board of Contracts Appeals ("IBCA") precludes this Court from reviewing the propriety of that same termination as part of Plaintiff's current appeal of the assessment of reprocurement costs based upon the Election Doctrine. However, as argued more fully below, the Election Doctrine has no application to this dispute because the final decision before this Court has not been previously appealed to any forum. Rather, Plaintiff's appeal is governed by the *Fulford* Doctrine, which permits Plaintiff to challenge the propriety of the termination decision, as well as the assessment of reprocurement costs, notwithstanding its prior appeal to the IBCA.

A. The Election Doctrine Does Not Apply Where There Is No Previous Election.

Plaintiff does not dispute its prior appeal to the IBCA of two contracting officer's final decisions, each dated October 29, 1999 (collectively the "Termination Final Decisions"), terminating two delivery order contracts with the Department of the Interior, Minerals Management Service, for the renovation of telephone and data systems at the Department of Veterans Officer's Samual S. Stratton Medical Center in Albany, New York. That appeal was withdrawn without prejudice by order of the IBCA dated December 3, 2001. Subsequent thereto, a second final decision was issued on the Albany project by the contracting officer on February 4, 2003, for the assessment of reprocurement costs in the amount of $699,115.00 ("Reprocurement Final Decision"). The Reprocurement Final Decision is the subject matter before this Court and has not been previously appealed by Plaintiff. Despite the fact that Plaintiff has elected only one forum to challenge the Reprocurement Final Decision, Defendant argues that the Election Doctrine (and the jurisdictional requirements set forth in the Contract Disputes Act ("CDA") at 41 USC § 609) bars Plaintiff from seeking relief for the wrongful termination as alleged in Count I of Plaintiff's Complaint because of Plaintiff's previous appeal of the Termination Final Decisions to the IBCA. However, because the prior appeal to the IBCA involved final decisions that are separate and distinct from the final decision appealed to this Court, and were never decided on the merits, the Election Doctrine is not applicable.

Indeed, a review of the cases discussing the Election Doctrine supports Plaintiff's contention that it does not apply where there are two independent, albeit related, contracting officer's final decisions. For instance, in *Bonneville Associates v. U.S.*, 43 F.3d 649 (Fed. Cir. 1994), cited by Defendant, the contractor appealed a final decision demanding payment of costs incurred by the government to correct structural defects in a building the contractor sold to GSA.

Pursuant to the contract, Bonneville was required to renovate a building to make it suitable for government use. After taking possession of the building and discovering structural defects, the contracting officer issued a final decision assessing costs to correct the defects under the contract's warranty provision. Bonneville then appealed the sole contracting officer's assessment decision to the General Services Board of Contract Appeals, dismissed the matter without prejudice, and refiled its complaint in the Court of Federal Claims ("CFC"). On the government's motion to dismiss, the CFC determined that Bonneville's initial election to appeal the assessment decision before the GSBCA divested the CFC of subject matter jurisdiction under to the CDA, 41 U.S.C. § 609 (a)(1). The Federal Circuit Court of Appeals citing the Election Doctrine affirmed. *Id.* Similarly, in *National Neighbors, Inc. v. U.S.*, 839 F.2d 1539 (1981), also cited by Defendant, the contractor appealed a single final decision of the contracting officer denying the contractor's claim for increased performance costs under a research contract with HUD. Subsequent to filing an appeal with the HUDBCA, the contractor filed a protective suit in the CFC in the event that HUDBCA determined that the appeal before it was untimely filed. Prior to HUDBCA making its jurisdictional determination, the CFC dismissed the protective complaint filed by the contractor on the basis that the CDA precluded it from asserting jurisdiction. *Id.* The Federal Circuit vacated the CFC's dismissal and remanded the matter on the basis that the CFC needed to wait until HUDBCA made a determination as to whether it could exercise jurisdiction.[1]

[1] The Federal Circuit also clarified that the Election Doctrine does not apply to bar claims filed at the CFC where there was a previous, untimely appeal filed with a board of contract appeals stating that the first forum must be able to exercise jurisdiction for a "knowing election" to be made under the CDA. 839 F.2d at 1542.

Both *Bonneville* and *National Neighbors* rely upon the seminal decisions in *Tuttle/White Constructors, Inc. v. U.S.*, 228 Ct. Cl. 354 (1981) and *National Electric Coil v. U.S.*, 227 Ct. Cl. 595 (1981), where the CFC first addressed the issue of whether the CDA required contractors to make an either/or election between the agency boards of contract appeals and the CFC for appealing final decisions of the contracting officer. In both *Tuttle/White* and *National Electric*, the decision rested upon whether an appeal of a "single" contracting officer's decision could proceed in the CFC after an appeal of the same decision had been filed and dismissed by an agency board. And each case has consistently stated that once an election to appeal a final decision in a particular forum is "knowingly" made, the forum is binding on the contractor for adjudication of the merits of that final decision. Thus, the common thread running through all of these cases is the fact that the plaintiff "elected" to file an appeal of a "single" contracting officer's final decision in one forum, withdrew the appeal, and then re-filed its appeal of the same contracting officer's final decision in a second forum. Plaintiff does not dispute that such action runs afoul of the CDA. But the common factual scenario that binds the Election Doctrine cases has no connection to the factual scenario here.

In this case, Plaintiff is only appealing the Reprocurement Final Decision. The mere fact that the Termination Final Decisions and the Reprocurement Final Decision are related to the same contract and require that the merit of the underlying termination decision be analyzed, does not defeat Plaintiff's CDA appellate rights (90-day period to the BCA / 12 month period to CFC). Those appellate rights attach to each final decision on an independent basis. *Bromley Contracting, Inc. v. U.S.* 15 Ct. Cl. 100 (1988). Defendant has cited to no authority that an election for one appeal of a final decision is binding for every other final decision issued under

the same contract or that is similarly related as a termination decision and a reprocurement decision.

By contrast, the decision in *American Nucleonics Corp.*, ASBCA No. 27,894, 83-1 BCA ¶ 16,520, rejected an argument similar to Defendant's and provides guidance to this Court. There, the contracting officer issued a final decision terminating American's contract for default and advised American that it could appeal the decision to either the ASBCA or the CFC. In response thereto, American timely appealed the decision to the CFC. Approximately one year later, the contracting officer issued a second final decision assessing $506,005.96 in excess reprocurement costs. Again, the contracting officer advised American that it could appeal the final decision to either the ASBCA or to the CFC. American opted to file an appeal of the reprocurement costs with the ASBCA. The government then sought to dismiss the reprocurement appeal before the ASBCA asserting the very same argument that the government submits here - *i.e.* that having elected to challenge the propriety of the default termination in one forum, the contractor is subsequently precluded from litigating the reprocurement dispute in another forum. The ASBCA disagreed. Distinguishing the decision in *Tuttle/White* on the basis that it only involved a single final decision, the ASBCA opined that the default termination and the reprocurement cost determination each involved a "separate and distinct decision" from which separate appeals could be maintained in separate forums without running afoul of the CDA.[2] *See also Crawford Technical Services, Inc.*, ASBCA No. 36,732, 89-2 BCA ¶ 21,783 (stating that "decisions on different claims may be appealed to either forum, even when they arise under the same contract."); *Bromley Contracting, Inc. v. U.S.*, 15 Ct. Cl. 100 (1988). Thus,

---

2 As a procedural matter, the ASBCA did state in dicta that it would stay the reprocurement matter pending resolution of the propriety of the default termination by the CFC on motion by either party.

contrary to the arguments advanced by Defendant, the Election Doctrine has no application where there are two (or more) contracting officer's final decisions, since each decision confers independent appellate rights. As such, the CFC may exercise jurisdiction over Plaintiff's timely filed appeal of the Reprocurement Final Decision even though Plaintiff previously filed and dismissed without prejudice its appeal of the Termination Decisions before the IBCA.

B. The Election Doctrine Does Not Trump The *Fulford* Doctrine In This Case.

While the Election Doctrine sets forth well settled law in regards to a single contracting officer's final decision, it does not apply in the context of the *Fulford* Doctrine where no second appeal is being prosecuted attacking the propriety of the termination decision. The *Fulford* Doctrine was first articulated by the ASBCA in *Fulford Manufacturing Co.*, ASBCA No. 2143, 1955 WL 808 (1955).[3] Therein, the ASBCA held that the default and disputes clauses allowed the contractor to assert excusability as a defense to the assessment of reprocurement costs even if the contractor did not timely challenge the termination decision. The logic behind application of the *Fulford* Doctrine is two-fold. First, it allows the parties to avoid unnecessary litigation by allowing the propriety of the default termination to be challenged not only within twelve months

3 *Fulford* was decided prior to enactment of the Contract Disputes Act when disputes between the contracting officer and the contractor were first heard by an agency board and then appealed to the Court of Claims. *D. Moody & Co., Inc. v. U.S.,* 5 Cl. Ct. 70, 72 (1984). Subsequent to the enactment of the CDA in 1978, contractors were provided with "direct access" to the courts on matters, which previously were limited to first being brought before the agency boards. *Id.* After the enactment of the CDA, and the rise of the Election Doctrine, the *Fulford* Doctrine continued to be applied as the law with regards to when and how the propriety of default terminations could be adjudicated. Thus, as in *American Nucleonics,* discussed *supra,* there may be the case where one forum determines the propriety of the termination and another forum determines the availability of the assessment of the reprocurement costs. *American,* ASBCA No. 27,894, 83-1 BCA ¶ 16,520. However, since there is no pending appeal of the Termination Decision here like there was in *American*, there is no need for this Court to stay the proceedings pending resolution by an agency board. Similarly, as argued *infra*, the *Fulford* Doctrine allows the court to determine the propriety of the default termination in the current appeal.

of the contracting officer's termination decision, but also within twelve months of the contracting officer's decision assessing reprocurement costs. *D. Moody & Co., Inc. v. U.S.,* 5 Cl. Ct. 70, 72 (1984). Second, "the legality and propriety of the default is, of necessity, in issue when excess reprocurement costs are assessed." *Id.* Thus, for the court to determine that the reprocurement costs are valid, it must first determine that the termination is valid and not excused. *Id.* The holding in *Fulford* has since been adopted by all of the boards and the CFC and over time has evolved to allow the contractor to assert any defenses it may have to the assessment of reprocurement costs in addition to the defense of excusability.[4] *Id.*

Unlike the Election Doctrine, however, the *Fulford* Doctrine does not touch upon the jurisdictional or time limitations set forth in the CDA for appealing contracting officer's final decisions. *Moody*, 5 Cl. Ct. at 75. Consequently, this Court has noted that a contractor's challenge to the propriety of a default termination ripens at two distinct periods of time. *Moody*, 5 Cl. Ct. at 75-76 (stating that the *Fulford* Doctrine "causes an issue to arise at two separate times" and that the CDA does not "preempt" the *Fulford* doctrine because the *Fulford* Doctrine "does not create time limitations, but only speaks to the events that start an appeal period"). The first time the propriety of the termination is ripe for consideration is upon issuance of the termination for default. *Id.* The second time the issue is ripe for consideration is upon the issuance of the reprocurement determination. *Id.* Considering that this Court has specifically recognized that the assessment of reprocurement costs inherently contains a determination that

---

4 In 1978, the ASBCA acknowledged expanded application of the Fulford Doctrine in *Fairfield Scientific Corp.*, ASBCA No. 21,151, 78-1 BCA ¶ 13,082 at p. 63,905. Thereafter, when challenging the assessment of reprocurement costs, the contractor could assert any challenged to the original default termination and not just issues of excusability. The CFC has also adopted this expanded application. *Marshall Associated Contractors, Inc. v. U.S.*, 31 Fed. Cl. 809, 815 (1994)(stating that the contractor may assert any defenses to the termination decision when challenging the reprocurement decision.

the default termination was proper, the fact that Plaintiff appealed the Termination Decision to the IBCA and dismissed it is not dispositive of whether this Court can adjudicate the propriety of the termination decision in the present appeal. The *Fulford* Doctrine specifically allows this Court to adjudicate the propriety of the termination and allows Plaintiff to assert any defense to the termination including excusability. *Marshall,* 31 Fed. Cl. at 815. In other words, had Plaintiff not previously appealed the Termination Final Decisions, there would be no dispute by Defendant that Plaintiff could challenge both the default decision and the assessment of reprocurement costs. So it is illogical for Defendant to argue that an appeal of the Termination Final Decisions, dismissed without prejudice, serves to bar Plaintiff's appeal now.

Defendant's reliance on *Marshall Associated Contractors, Inc. v. U.S.*, 31 Fed. Cl. 809 (1994), to support motion for partial dismissal is likewise misplaced. *Marshall* is inapposite to this matter because the appeal of the default termination in that case was the subject of a pending matter before the agency board and thus the CFC was divested of jurisdiction to hear the issue pursuant to 28 U.S.C. § 1500. There, plaintiff appealed the termination decision to the IBCA. After a settlement agreement was reached between the parties, the IBCA dismissed the appeal without prejudice. When the government reneged on its agreement, Marshall reinstated its appeal. The IBCA, however, dismissed the appeal for lack of prosecution without prejudice pending the scheduling of a hearing on the merits of the case. Three years later, the contracting officer issued a final decision assessing reprocurement costs. Marshall appealed the reprocurement decision to the CFC. Count I of Marshall's complaint asserted that the government improperly violated the default termination procedures, Count II asserted that the contract was improperly terminated for default, Count III asserted that the government acted improperly with regards to the settlement, and, Count IV asserted that there was a material

deviation from the original contract on reprocurement. Eight days prior to Marshall filing its complaint, however, the IBCA dismissed Marshall's claim with prejudice for lack of prosecution noting that neither party had scheduled a hearing on the merits of the termination decision. Thereafter, Marshall filed a motion for reconsideration with the IBCA, which was granted. Therefore, Marshall's appeal of the termination decision was reinstated by the IBCA.

In response to the reinstatement, the government moved to dismiss the complaint before the CFC arguing that Marshall elected to appeal the termination in the IBCA which said appeal divested the CFC of jurisdiction to adjudicate the propriety of the termination decision and that the CFC was also barred from hearing the appeal of the reprocurement costs on the basis that the *Fulford* Doctrine was trumped by Marshall's binding election to appeal the default termination in the IBCA. In regards to the first issue, the CFC ruled that because the IBCA granted Marshall's motion for reconsideration and reinstated the appeal of the default termination decision that there was a binding election to proceed on that issue in the IBCA. Therefore, the CFC granted Marshall's request to transfer Count I, II and III to the IBCA where there was a pending appeal. *Id.* at 816. On the issue of the reprocurement costs, the CFC ruled that because the issue of the reprocurement costs was not currently before the IBCA, that the CFC had jurisdiction over the appeal of the reprocurement decision. Therein, the CFC provided in dicta that: "The Fulford Doctrine applies to all cases where the contractor delays filing a reprocurement suit even where the parallel default termination case was dismissed with prejudice for failure to prosecute." *Id.* at 815. Since the CFC acknowledged that it could assess the propriety of the default termination in the appeal of the reprocurement decision, it is likely that it did not take jurisdiction over the issue of the propriety of the default termination due to 28 U.S.C. § 1500. This statute provides that the

CFC *shall not have jurisdiction of any claim* that the plaintiff has pending in any other court.[5] Contrarily, in this matter, there is no pending suit challenging the propriety of the default termination. As such, 28 U.S.C. § 1500 does not bar this Court from asserting jurisdiction over the propriety of the default termination as part of its jurisdiction over Plaintiff's appeal of the reprocurement costs. In fact, the decision in *Marshall*, as well as other cases discussing the *Fulford* Doctrine, specifically allows such action.

Considering that the Election Doctrine does not bar this Court from hearing Plaintiff's present appeal of the Reprocurement Decision and the *Fulford* Doctrine allows this Court to make determinations as to the propriety of the underlying termination decision, Plaintiff, American Telecom Corporation, prays that this Court deny Defendant's Motion for Partial Dismissal.

Respectfully submitted,

/s/

Robert J. Symon
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639

Attorney for Plaintiff,
AMERICAN TELECOM CORPORATION

Of Counsel:

Stasia Broadwater, Esq.
Christyne K. Brennan, Esq.
Spriggs & Hollingsworth

---

[5] The *Marshall* court stayed the reprocurement matter pending a ruling by the IBCA on the propriety of the default termination. *See also American Nucleonics Corp.*, ASBCA No. 27,894, 83-1 BCA ¶ 16,520, which reached the same result.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October 2003, I served a true copy of the foregoing Plaintiff's Opposition To Defendant's Motion For Partial Summary Judgment, upon the following party by electronic filing:

James M. Meister
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attention: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, DC 20530
Fax: (202) 307-0972

/s/______________________________
Robert J. Symon