# In the United States Court of Federal Claims

No. 03-1627 C

(E-Filed: February 18, 2004)

| | | |
|---|---|---|
| AMERICAN TELECOM CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant. | ) | Motion for Partial Dismissal; RCFC 12(b)(1); the Election Doctrine, 41 U.S.C. §§ 605, 609 (2000); the Fulford Doctrine; defense against the assessment of reprocurement costs |

Robert J. Symon, Washington, DC, for plaintiff.

James M. Meister, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director, Department of Justice, Civil Division, Commercial Litigation Branch, Washington DC, for defendant. Hugo Teufel and Jeanne A. Anderson, Office of the Solicitor, Department of the Interior, of counsel.

OPINION AND ORDER

HEWITT, Judge

This action arises under section 609 of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601-613 (2000). Before the court is Defendant's Motion for Partial Dismissal (Def.'s Mot.) and the responsive briefing thereto.[1] Defendant seeks the partial

[1]The responsive briefing includes: American Telecom Corporation's Memorandum in Support of Its Opposition to Defendant's Motion for Partial Dismissal (Pl.'s Opp.); Defendant's Reply Brief in Support of Its Motion for Partial Dismissal (Def.'s Reply); and Plaintiff's Surreply in Support of Its Opposition to Defendant's Motion for Partial Dismissal (Pl.'s Surreply).

dismissal of the first count of plaintiff's two-count complaint to the extent that plaintiff seeks to recover damages for the wrongful termination for default of certain contracts. That count seeks the conversion of a termination for default to a termination for convenience. Defendant contends that plaintiff previously made an irrevocable election to proceed before the Interior Board of Contract Appeals and, under the Election Doctrine, has deprived this court of jurisdiction to hear the first count of its complaint. For the following reasons, defendant's motion is GRANTED.

## I. Background

Plaintiff American Telecom Corporation (ATC) is a technology installation firm with its principal place of business in Charleston, South Carolina. Complaint (Compl.) ¶ 2. On or about January 29, 1999, ATC was awarded by the United States Department of the Interior Mineral Management Service (DOI) two "firm-fixed-price, indefinite quantity, indefinite delivery order contract[s]" (the Albany Contract), Compl. ¶¶ 4-5, 20-21, see also Def.'s Mot. at 2; Pl.'s Opp. at 2, for work on the Albany Project. The Albany Project required ATC to "provide all labor, equipment and materials to perform site preparation and cabling at the Department of Veteran Affairs, Samuel S. Stratton Medical Center in Albany, New York." Id. ¶ 4. The estimated cost of the work to be accomplished under the Albany Contract was $2,863,532.56. Id. ¶ 5.

ATC alleges that, after beginning contract performance on the Albany Project, it "encountered undisclosed conditions and obstructions that were materially different from the Albany Contract drawings." Id. ¶ 6. The allegedly "inaccurate Albany Contract drawings and the Government's representations" adversely affected ATC's progress performance and caused the contractor to incur additional costs. Id. ¶ 8. ATC asserts that, in October 1999, "the Government wrongfully terminated [plaintiff] for default for failure to make substantial progress on the Albany Project in accordance with [the] original project schedule." Id. ¶ 11.

"On December 10, 1999, ATC filed an appeal before the Interior Board of Contract Appeals" (Board) asserting that DOI improperly terminated the Albany Contract for default. Def.'s Mot. at 2; Appendix of Exhibits to Defendant's Motion to Dismiss (Def.'s App.) at 001-007 (ATC's complaint before the Board). As part of its requested relief, ATC sought "such compensation as it is due under the termination for convenience clause of its contract." Def.'s App. at 006. In November 2001, ATC moved to withdraw its claims before the Board, explaining that it "was financially unable to continue to pursue its claims before the Board," Def.'s Mot. at 3, and requesting a dismissal without prejudice to preserve its right to "'later challeng[e] the default as a defense to the future imposition, assessment, or offset of any excess reprocurement costs' under the Fulford Doctrine." Id. (quoting Def.'s App. at 022 [sic 024] (ATC's motion to withdraw its appeal before the

Board)). By Order dated December 3, 2001, the Board dismissed ATC's appeal "'without prejudice to [ATC]'s potential right to challenge excess reprocurement costs should the government decide to impose them.'" Def.'s Mot. at 3 (quoting Def.'s App. at 025 (Board's order)).

After terminating the Albany Contract, DOI awarded a contract to reprocure site preparation and cabling work on the Albany Project in April 2000. Compl. ¶ 12; Def.'s Mot. at 3. At ATC's request for a final decision "establishing the [g]overnment's excess costs of reprocurement on the Albany Project," Compl. ¶ 14, the Contracting Officer issued a final decision on February 4, 2003 stating that "ATC owed the [g]overnment $699,115 for costs associated with completing the Albany Project under a reprocurement contract," id. ¶ 15.

In July 2003, ATC filed a two-count complaint in this court. In Count I, ATC requests that the court convert its wrongful termination for default on the Albany contract into a termination for convenience and deny DOI's assessment of reprocurement costs. Id. ¶¶ 16, 18. In Count II, which is identified in the complaint as "Count III-Bath Project," ATC challenges the withholding of payment by DOI from ATC on the Bath Project to offset the reprocurement costs incurred on the Albany Project. See id. ¶ 27. Defendant moves to dismiss Count I to the extent that plaintiff seeks to recover damages due to a termination for convenience of the Albany Contract, on the ground that under the Election Doctrine, "ATC made a binding decision to proceed [before the Board], to the exclusion of this Court's jurisdiction." Def.'s Mot. at 4.

## II. Discussion

### A. Standard of Review

In considering a motion to dismiss challenging subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC),[2] the court assumes that all well-pleaded facts alleged in the complaint are true and draws all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000). However, "where the jurisdictional facts in the complaint . . . are challenged," Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999), the court may examine relevant evidence beyond the pleadings, "including affidavits and deposition testimony." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573,

[2]RCFC 12(b)(1) governs dismissal for "lack of jurisdiction over the subject matter." RCFC 12(b)(1).

1584 (Fed. Cir. 1993). Plaintiff bears the burden of establishing that subject matter jurisdiction exists. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936) ("[T]he party who seeks the exercise of jurisdiction in his favor . . . must carry throughout the litigation the burden of showing that he is properly in court."); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) ("[T]he burden of establishing jurisdiction . . . must be carried by [the plaintiff in the underlying suit].").

B. The Election Doctrine and the Fulford Doctrine

Defendant asserts that this court must dismiss Count I of plaintiff's complaint under the "well-settled Election Doctrine of the Contract Disputes Act . . . for lack of subject matter jurisdiction." Def.'s Mot. at 4. Defendant argues that "[w]hen ATC previously filed an appeal before the Board directly challenging the contracting officer's decision to terminate the [Albany Contract] with plaintiff for default [, the same claim asserted in Count I of the complaint here], ATC made a binding election to proceed in that forum, to the exclusion of this Court's jurisdiction." Id. Defendant contends that because "the contracting officer properly advised [ATC] of its right and choice of proceeding before the Board or [the Court of Federal Claims], ATC made its informed, knowing and voluntary election of forum" when it filed its notice of appeal and complaint before the Board. Id. at 7.

Plaintiff argues that "the Election Doctrine has no application to this dispute because the final decision before this Court has not been previously appealed to any forum." Pl.'s Opp. at 1. Rather, plaintiff asserts that its "appeal is governed by the Fulford Doctrine, which permits Plaintiff to challenge the propriety of the termination decision, as well as the assessment of reprocurement costs, notwithstanding its prior appeal to the [Board]." Id.

The CDA provides that a contractor may challenge a contracting officer's final decision on a claim by either filing an appeal and pursuing a complaint with the appropriate board of contract appeals, 41 U.S.C. § 606,[3] or appealing directly to the Court of Federal Claims, 41 U.S.C. § 609(a)(1).[4] Courts have consistently interpreted the CDA to require a plaintiff to choose between appealing a final decision of the contracting officer in this court or appealing to the board of contract appeals, giving rise to "a body of jurisprudence

---

[3]Section 606 states that "[w]ithin ninety days from the date of receipt of a contracting officer's decision under section 605 of this title, the contractor may appeal such decision to an agency board of contract appeals, as provided in section 607 of this title." 41 U.S.C. § 606.

[4]Section 609(a)(1) states that "in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims." 41 U.S.C. § 609(a)(1).

known as the ' Election Doctrine.'" Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1541 (Fed. Cir. 1988).

As first articulated by the United States Court of Claims in Tuttle/White Constructors, Inc. v. United States, 656 F.2d 644 (Ct. Cl. 1981), and in Santa Fe Engineers, Inc. v. United States, 677 F.2d 876 (Ct. Cl. 1982), the Court of Claims determined that, although the CDA affords a contractor with a choice of forums in which to challenge an adverse decision by the contracting officer, the plain language of the statute indicates that the contractor may not pursue dual avenues of appeal but must make an election. Tuttle/White Constructors, Inc., 656 F.2d at 649 (The "in lieu of" language in section 609(a) clearly indicates that the contractor has a choice of forums but does not allow a contractor to pursue its claims before both forums.); Santa Fe Eng'rs, Inc., 677 F.2d at 878 (noting the disjunctive language in section 605(c)(5) authorizing a contractor to file an appeal "or" a suit on its claim and the disjunctive language in section 609(a) permitting action in the United States Court of Claims "in lieu of" an appeal to an agency board); Nat'l Neighbors, Inc., 839 F.2d at 1541-42 (stating that "the contractor is precluded by the [CDA] from pursuing its claim in both forums"). In National Neighbors, the Federal Circuit recognized that "a contractor's filing of an appeal or initiation of a suit in a forum with jurisdiction over the proceeding" constitutes the election under the Election Doctrine that precludes the contractor from pursuing its claim in the alternate forum. 839 F.2d at 1542. The Federal Circuit subsequently stated in Bonneville Associates, Ltd. v. United States, that the "[t]he Election Doctrine requires not only that the elected forum possess subject matter jurisdiction over the appeal, but also that the contractor's choice of forum be 'informed, knowing and voluntary.'" 43 F.3d 649, 655 (Fed. Cir. 1994) (quoting Mark Smith Constr. Co. v. United States, 10 Cl. Ct. 540, 544 (1986)).

In this case, the parties do not dispute that ATC made an "informed, knowing, and voluntary" election as contemplated in Bonneville Assocs., Ltd., 453 F.3d at 655, to proceed before the Board in challenging its termination for default on the Albany Contract. In fact, ATC acknowledges "its prior appeal to the IBCA" of the contracting officer's final decision terminating ATC's Albany Contract and the subsequent withdrawal of that appeal without prejudice by order of the Board dated December 3, 2001. Pl.'s Opp. at 2. Rather, the crux of the parties' disagreement here is the interplay, if any, between the Election Doctrine and the Fulford Doctrine. DOI argues that the Election Doctrine bars ATC from seeking relief for the wrongful termination as alleged in Count I of its complaint because ATC previously appealed the contracting officer's final decision concerning its termination for default to the Board. Def.'s Mot. at 7-8. ATC contends that its prior appeal to the Board involved only the contracting officer's final decision concerning its termination for default on the Albany Contract, a separate and distinct matter from the contracting officer's final decision concerning DOI's reprocurement costs. Pl.'s Opp. at 2. ATC argues that it is only the final decision concerning DOI's reprocurement costs that ATC now appeals in this

court. Id. at 2, 4. ATC asserts that, because the decisions concerning termination for default and reprocurement costs are separate and distinct, the Election Doctrine is not applicable and does not trump the Fulford Doctrine. Pl.s' Opp. at 2, 6.

The Fulford Doctrine was set forth by the Armed Services Board of Contract Appeals (ASBCA) in Fulford Manufacturing Co., ASBCA Nos. 2143 and 2144, 1955 ASBCA LEXIS 970 (May 20, 1955). In Fulford, the ASBCA determined that the default and disputes clauses allowed a contractor to assert excusability as a defense to an assessment of reprocurement costs even though the contractor did not timely challenge the termination decision. See 1955 ASBCA LEXIS 970, at **23-30. Although decided prior to the 1978 enactment of the CDA, Pub. L. No. 95-563, 92 Stat. 2383 (codified at 41 U.S.C. §§ 601-613), during a period when disputes between the contracting officer and the contractor were first considered by an agency board and then appealable to the Court of Claims, the Fulford Doctrine has evolved to allow a contractor to assert any defenses, including the defense of excusability,[5] that the contractor may have against the assessment of reprocurement costs. See D. Moody & Co. v. United States, 5 Cl. Ct. 70, 72 (1984); Deep Joint Venture v. Gen. Servs. Admin., GSBCA No. 14,511, 02-2 B.C.A. (CCH) ¶ 31,914, 2002 GSBCA LEXIS 116, *27 (May 31, 2002). After the enactment of the CDA, this court and the various boards of contract appeals continued to recognize the viability of the Fulford Doctrine. See, e.g., Deep Joint Venture, 2002 GSBCA LEXIS 116, at *29. This court's predecessor, the United States Claims Court, first recognized the Fulford Doctrine in 1984 in D. Moody & Co. See 5 Cl. Ct. at 72, 79.

In D. Moody & Co., the Claims Court observed that the Fulford Doctrine causes the issue of the propriety of a default termination "to arise at two separate times." Id. at 76. The first time the issue is ripe for consideration is upon the issuance of a default termination. See id. at 79. The second time the issue is ripe for consideration is upon the issuance of a reprocurement determination. See id. The Claims Court further observed that, because the Fulford Doctrine "does not create time limitations, but only speaks to the events that start an appeal period," it is not preempted by the CDA. Id. at 76.

In Marshall Associated Contractors, Inc. v. United States, 31 Fed. Cl. 809 (1994), this court explicitly recognized that, under the Fulford Doctrine, a contractor may assert any defenses it has to the underlying termination decision when challenging a

[5]The defense of excusability requires a contractor to establish by a preponderance of the evidence that its "inability to comply with its contract obligations arose from causes beyond its control and without fault on its part." Sentinel Standard, ASBCA No. 26,199, 83-1 B.C.A. (CCH) ¶ 16,517, 1983 ASBCA LEXIS 433, *11 (Apr. 25, 1983); Eng'g Serv. Sys., PSBCA No. 2933, 92-3 B.C.A. (CCH) ¶ 25,146, 1992 PSBCA LEXIS 35, *10 (May 29, 1992).

reprocurement decision. Id. at 815. The asserted defenses to the termination may include the defense of excusability. Id. at 811, 815.

Defendant here does not challenge the propriety of challenging the termination decision underlying the assessment of reprocurement costs. Def.'s Reply at 3 & n.1. Rather, DOI challenges "that affirmative portion of Count I [of plaintiff's complaint], which seeks to recover termination-for-convenience damages . . . based upon the alleged wrongful termination for default" of ATC's Albany Contract. Id. at 2. DOI contends that "[t]he claim seeking denial of the assessment of reprocurement costs is purely defensive in nature," and that the relief to which ATC is entitled is limited. Id. at 3 n.1. DOI asserts that, if ATC can show that the underlying termination decision was improper, it can only avoid payment of the assessed reprocurement costs. Id.

ATC argues that, inherent in this court's jurisdiction under the Fulford Doctrine "to make a determination as to the propriety of the termination decision" underlying the assessment of reprocurment costs, Pl.'s Surreply at 1, is the right of the contractor "to recover all costs incurred during performance of the Contract based on the conversion of the wrongful default termination to a termination for the convenience of the Government." Id. at 1-2. Plaintiff asserts that "the Fulford Doctrine permits [plaintiff] to seek such relief by challenging the propriety of the termination decision in response to a final decision on reprocurement costs--even if untimely under the original final decision on the termination for default." Id. at 2.

The court does not construe the Fulford Doctrine as broadly as ATC urges. The authorities cited by the parties uniformly recognize that the Fulford Doctrine permits a contractor to assert any defenses, including excusability, that the contractor may have to an underlying default determination when challenging a reprocurement determination. See D. Moody & Co., 5 Cl. Ct. at 75; Marshall Associated Contractors, Inc., 31 Fed. Cl. at 815. However, contrary to plaintiff's assertion, the Fulford Doctrine does not afford a contractor challenging the imposition of reprocurement excess costs the right to recover costs upon a showing that the underlying default determination was improper. See Marshall Associated Contractors, Inc., 31 Fed. Cl. at 815 (noting that "[s]ince the assessment of excess costs does not ordinarily occur at the time of the default termination, a contractor may choose not to contest the default termination because the contractor does not anticipate any monetary liability"); Deep Joint Venture, 2002 GSBCA LEXIS 116, at *31 (stating that "while we would not permit a contractor solely to seek, more than ninety days after receiving a default termination decision, a conversion of the default termination to one for the convenience of the Government, or to seek to recover convenience termination costs once the decision is final, we do permit the contractor to challenge the propriety of the termination action in defending against an assessment of excess costs of reprocurement").

Moreover, the factual circumstances of this case preclude allowing ATC to recover any costs for the Albany Contract should it successfully demonstrate that its default determination was wrongful. ATC elected to appeal its default determination before the Board and then sought a dismissal without prejudice of its appeal, noting its financial inability to continue its appeal. See Def.'s App. at 022. In its motion to withdraw its appeal, ATC expressly recognized " that if it withdraws its appeal at this point, it will be unable to affirmatively challenge the Contracting Officer's final decision relating to the default [and that] [a]ny such future affirmative challenge . . . would be time-barred" under the CDA. Id. Aware of a potential "need to challenge the propriety of the default decision as a defense to a future imposition of such [excess procurement] costs," id. at 023, and noting the permissibility of "such defensive challenges" under the Fulford Doctrine, id., ATC sought a dismissal without prejudice for the limited purpose of protecting its right to defend against an excess procurement cost assessment. See id. at 024.

Because ATC elected to appeal the merits of its default termination on the Albany Contract to the Board before voluntarily dismissing the appeal with a limited reservation of its right to challenge the assessment of reprocurement costs, it is the view of the court that, under the Election Doctrine, ATC is precluded from seeking damages in connection with its default termination in this court. The Fulford Doctrine does, however, permit ATC to challenge the assessment of reprocurement costs by asserting any defense it may have had to the default termination decision. In fact, in American Nucleonics Corp., ASBCA No. 27,894, 83-1 B.C.A. (CCH) ¶ 16,520, 1983 ASBCA LEXIS 436 (May 2, 1983), one of the board of contract appeals cases on which ATC relies in its briefing, the ASBCA expressly recognized that one forum may determine the propriety of the termination and another forum may determine the availability of the assessment of the reprocurement costs. Id. at *4-5. Accordingly, to the extent that Count I of the complaint seeks an affirmative recovery of costs, it should be dismissed.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Partial Dismissal is GRANTED with respect to Count I of the Complaint insofar as Count I seeks the recovery of damages for wrongful termination for default of the Albany Contract. Defendant shall respond to the remaining claims in the Complaint on or before March 16, 2004.

Due to an incomplete attachment of this order as electronically filed on February 17, 2004, the Clerk of the Court is directed to strike that docket entry.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge